Opinion issued December 30, 2005

     












In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00751-CV




MICHELLE LYNN VASQUEZ, Appellant

V.

TEXAS DEPARTMENT OF PROTECTIVE
 & REGULATORY SERVICES, Appellee




On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2004-00430J




 O P I N I O N
          Appellant, Michelle Lynn Vasquez, appeals the trial court’s judgment
terminating the parent-child relationship between her and her child, Z.M. We
determine whether the evidence at trial was legally and factually sufficient to support
the termination order’s finding that appellant endangered Z.M. and that the
termination of appellant’s parental rights was in the best interest of Z.M. See Tex.
Fam. Code Ann. § 161.001(1)(E), (2) (Vernon Supp. 2005). We affirm. Facts
          Appellant is the mother of four children: M.F.M., M.R.M., M.D.V., and Z.M. 
Appellant has a long history with the Texas Department of Protective and Regulatory
Services (“TDPRS”).


 That history began in June of 2001, six months before M.D.V.
was born with marijuana in her system, when TDPRS received a report that M.F.M.
and M.R.M. had been exposed to drugs and left unsupervised while appellant slept
and that M.F.M. had drunk lighter fluid. Between this time and April 1, 2002,
TDPRS alleged four instances of neglectful or abusive conduct on the part of
appellant with regard to her children. In April 2002, a petition was filed against
appellant on behalf of her three children as a result of continued drug use and several
incidents of negligent supervision. This included an occasion on which M.R.M.
wandered from home onto a sidewalk of a busy street and was brought to a nearby
mall by persons who found M.R.M. and thought M.R.M. was missing and in danger. 
TDPRS took emergency custody of the children. In response to the petition in April,
appellant signed a family service plan on June 5, 2002, in which she agreed to
participate in parenting classes, to submit to random urinalysis testing, and to obtain
and to maintain appropriate housing and stable employment. Appellant agreed to
temporary orders giving custody of her children to TDPRS. Even though appellant
completed the parenting classes and counseling, she continued to use marijuana and
prescription drugs for recreational use.
          After Z.M. was born, on July 9, 2003, appellant took a drug and alcohol
assessment and was admitted for in-patient treatment. Carrie Coleman, an in-home
family-based case worker, was assigned to assist appellant upon her referral to
Family-Based Safety Services with the goal of returning appellant’s other three
children to her. Coleman met appellant for the first time on September 12, 2003, after
numerous unsuccessful attempts to get together with appellant. Appellant was
uncooperative with some of Coleman’s recommendations, including some of those
concerning child-proofing her residence. Sometime in September 2003, appellant’s
children were returned to her home. In October, appellant missed five appointments
with Coleman. On one appointment when Coleman went to appellant’s residence,
Coleman observed M.D.V. opening the door to the outside by herself. On another
appointment, Coleman observed appellant on the phone in the dining room while
Z.M. was left untended in an infant seat next to a bathtub filled with water in which
another child was bathing. During several appointments, Coleman was of the opinion
that appellant was high. In November 2003, appellant missed three appointments. 
In December, appellant missed two more appointments with Coleman. During this
time, Turning Point Counseling Services made numerous attempts to call appellant
to schedule a random urinalysis test. For example, Turning Point left three messages
before appellant appeared on November 14, 2003. On that date, appellant tested
positive for marijuana. Turning Point left four messages before appellant appeared
for another test in December 2003, which appellant passed. On January 15, 2004,
Z.M. was taken into possession by TDPRS. Sufficiency of the Evidence
          In her first issue presented for review, appellant contends that the evidence was
legally and factually insufficient to terminate parental rights to her child, Z.M. 
Specifically, appellant contends that the evidence was legally and factually
insufficient to prove by clear and convincing evidence that appellant engaged in
conduct that endangered the physical or emotional well-being of Z.M. under section
161.001(1)(E) of the Texas Family Code. In her second issue presented for review,
appellant contends that the evidence was legally and factually insufficient to prove
by clear and convincing evidence that termination of appellant’s parental rights was
in the best interest of Z.M. 
A.      Standards of Review
          In termination-of-parental-rights cases, “Due Process requires that [TDPRS]
support its allegations [of termination] by at least clear and convincing evidence” in
order to reduce the risk of erroneous termination. Santosky v. Kramer, 455 U.S. 745,
747-48, 102 S. Ct. 1388, 1391-92 (1982); In re B.L.D. & B.R.D., 113 S.W.3d 340,
353-54 (Tex. 2003). “Clear and convincing evidence” is defined as that measure or
degree of proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established. Tex. Fam. Code
Ann. § 101.007 (Vernon 2002).
          1.       Legal Sufficiency
          When an appellant attacks the legal sufficiency of an adverse judgment on an
issue for which she did not have the burden of proof, that appellant must demonstrate
that there is no evidence to support the adverse finding. Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). In parental-rights-termination cases, the standard of
review for legal sufficiency is whether the evidence is such that a fact finder could
reasonably form a firm belief or conviction about the truth of the matter on which
TDPRS bears the burden of proof. In re J.F.C, 96 S.W.3d 256, 266 (Tex. 2002). In
reviewing a no-evidence challenge, we consider the evidence in a light most
favorable to the verdict, assume that the fact finder resolved disputed facts in favor
of its finding if a reasonable fact finder could have done so, and disregard all contrary
evidence that a reasonable fact finder could have disbelieved or found to be
incredible. Id.; In re Guardianship of Hinrichsen, 99 S.W.3d 773, 781 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). 
          2.       Factual Sufficiency
          When an appellant attacks the factual sufficiency of an adverse finding on an
issue on which the opposing party had the burden of proof, that appellant must
demonstrate that there is insufficient evidence to support the adverse finding. 
Croucher, 660 S.W.2d at 58. In analyzing factual sufficiency, we consider whether
the disputed evidence is such that a reasonable fact finder could not have resolved
that disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 265. A
factual-sufficiency challenge will be overruled if, considering all of the evidence in
the record—both that which supports and that which contradicts the trial court’s
finding—the fact finder reasonably could form a firm conviction or belief that the
parent committed one of the alleged grounds of termination and that the termination
of parental rights is in the best interest of the child. In re C.H., 89 S.W.3d 17, 28-29
(Tex. 2002). 
B.      Findings Subject to Challenge
          A court may base a termination of parental rights upon a finding that a parent
engaged in conduct described in any subsection of Family Code section 161.001(1),
plus a finding that the termination is in the best interest of the child. See Tex. Fam.
Code Ann. §161.001(1), (2); In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston
[1st Dist.] 2003, no pet.). The trial court’s termination order contains findings by the
trial court that termination was in Z.M.’s best interest and that appellant had engaged
in conduct or knowingly placed Z.M. with persons who engaged in conduct that
endangered the physical or emotional well-being of Z.M. These findings satisfy the
requirements of section 161.001(1)(E) and (2) and also conform to the oral findings
made by the trial court at the conclusion of the termination hearing.
          TDPRS contends that the trial court’s judgment may be upheld upon proof
supporting any subsection of 161.001 that was pleaded, even though some of those
pleaded subsections were not found by the trial court. In particular, TDPRS argues
that this Court must affirm the trial court’s judgment on the basis of subsection
161.001(1)(D), which was also pleaded and is supported by evidence, but which
ground for termination appellant has not challenged on appeal. TDPRS’s argument
would have had merit if the trial court had found both subsections (D) and (E) in its
termination order. See Edwards v. Dep’t of Protective Servs., 946 S.W.2d 130, 135
(Tex. App.—El Paso 1997, no writ). Ita argument would also have had merit if a jury
had returned a broad-form verdict in a case in which several grounds for termination,
including subsection (D), had been alleged. See In re C.H., 25 S.W.3d 38, 48 (Tex.
App.—El Paso 2000), rev’d on other grounds, 89 S.W.3d 17 (Tex. 2002). TDPRS
appears to confuse the general rule in civil cases that findings should not be made in
the judgment with the requirement that the findings in section 161.001 of the Texas
Family Code be made in a parental-rights-termination order. See In re A.I.G., 135
S.W.3d 687, 694 (Tex. App.—San Antonio 2003, no pet.). If the trial court’s
findings could be disregarded, the general order of termination would be similar to
a general verdict in a trial to the court that could be upheld upon sufficient evidence
of any ground pleaded. We hold, however, that a parental-rights-termination order
can be upheld only on grounds both pleaded by TDPRS and found by the trial court. 
Therefore, we decline TDPRS’s invitation to uphold the trial court’s termination
order on a ground different from that stated in the order. Accordingly, appellant must
show that there is no or insufficient evidence either that she engaged in the conduct
described in section 161.011(1)(E) of the Family Code or that termination was in the
child’s best interest under section 161.001(2).
C.      Section 161.001(1)(E)
          Section 161.001(1)(E) of the Family Code provides that a court may terminate
the parent-child relationship if the court finds by clear and convincing evidence that
the parent has engaged in conduct or knowingly placed the child with persons who
engaged in conduct that endangers the physical or emotional well-being of the child. 
Tex. Fam. Code Ann. § 161.001(1)(E). “Endanger” means to expose to loss or injury
or to jeopardize. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987). Although such endangerment requires more than a threat of metaphysical
injury or the possible ill effects of a less-than-ideal family environment, it is not
necessary that the conduct be directed at the child or that the child actually suffer
injury. Id. Endangerment may be satisfied by showing that a parent engaged in a
“course of conduct” that endangered the child’s physical or emotional well-being. 
In re U.P., 105 S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied); In re J.O.C., 47 S.W.3d 108, 113 (Tex. App.—Waco 2001, no pet.). The
manner in which a parent treats other children in the family can be considered in
deciding whether that parent engaged in a course of conduct that endangered the
physical or emotional well-being of a child. In re D.L.N., 958 S.W.2d 934, 939 (Tex.
App.—Waco 1997, pet. denied). 
          At the outset, appellant concedes that the evidence arguably supports
termination for neglect under section 161.001(1)(D). Tex. Fam. Code Ann. §
161.001(1)(D) (“knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or emotional well-being of
the child”). We agree with appellant that this finding was not made, however. In
regard to the section 161.001(1)(E) finding, appellant acknowledges the existence of
evidence showing her neglect of other children and of her drug use, but claims that
there is no evidence that appellant’s conduct endangered Z.M. or that appellant
placed Z.M. with others who engaged in conduct that endangered Z.M.
          TDPRS does not contend, nor does any evidence show, that appellant placed
Z.M. with others who engaged in conduct endangering Z.M. TDPRS argues that the
primary conduct at issue in this case is the evidence of appellant’s illegal drug use
before and after the birth of Z.M., and after TDPRS had worked with appellant for
over a year trying to reunite her with her children. TDPRS points to appellant’s
marijuana use after pregnancies with her first two children and during her pregnancy
with her third child, resulting in M.D.V.’s being born with marijuana in her system. 
TDPRS also relies on appellant’s relapse in November 2003, four months after Z.M.
was born. TDPRS argues that appellant’s deliberate and voluntary decision to
continue to use illegal drugs was dangerous to Z.M. because it exposed Z.M. to the
possibilities that her supervision would be impaired by drug use and that appellant
would be arrested for using illegal drugs.
          We do not write on a blank slate in this case. The trial below was actually a
joint trial at which appellant’s parental rights to both Z.M. and M.D.V. were
terminated. The appeal of the termination of appellant’s parental rights to M.D.V.
was recently decided by our sister court in In re M.D.V., No. 14-04-00463-CV, 2005
WL 2787006 (Tex. App.—Houston [14th Dist.] Oct. 27, 2005, no pet.) (not
designated for publication). Under the same evidence that is before us, the
termination of appellant’s parental rights to M.D.V. was upheld, and we agree with
the decision of our sister court. Although the facts are more aggravated regarding
appellant’s endangerment of M.D.V., who was born with marijuana in her system and
who was the child left unattended in a bathtub full of water, we must consider
appellant’s treatment of M.D.V. in considering whether appellant engaged in a course
of conduct that endangered the physical or emotional well-being of Z.M. We note
that, although the court in In re M.D.V. relied partially on appellant’s having actually
injured M.D.V. by her use of marijuana during her pregnancy, resulting in
marijuana’s being in M.D.V.’s system at her birth, the court went further to state: 
“The trial court could have formed a firm belief or conviction that any drug use while
the children were in appellant’s care jeopardized or exposed them to loss or injury.” 
Id. Moreover, although the court might have focused its holding only on appellant’s
drug use, it squarely based its holding on both appellant’s drug use and appellant’s
failure to adequately protect or to supervise her children. Id.
          Despite there being no direct evidence of appellant’s drug use or neglect
actually injuring Z.M., TDPRS presented evidence that appellant engaged in a course
of conduct that endangered Z.M.’s physical and emotional well-being. The evidence
at trial supporting this conclusion includes: (1) a continued pattern of drug use
without regard for the effects that it had on the children, including one child’s having 
tested positive for drugs at birth and the appearance of appellant’s having been “high”
while caring for the children, including Z.M., as noted by a case worker during visits
to the home; (2) appellant’s failure to remain drug-free while under TDPRS’s
supervision, knowing that such conduct could place her children, including Z.M., at
risk; and (3) the case worker’s observation of incidents indicating appellant’s
negligent supervision (Z.M.’s being left unattended near a filled bathtub with another
child in the tub and M.R.M.’s exiting the home into high-traffic areas), without
appellant’s showing a willingness to take corrective measures, such as child-proofing
the home.
          We hold that the evidence, viewed in the light most favorable to the verdict, is
such that a fact finder reasonably could have formed a firm belief or conviction about
the truth of appellant’s endangerment of Z.M., which TDPRS had the burden of
proving by clear and convincing evidence. Thus, we hold that the evidence is legally
sufficient to show that appellant endangered Z.M. We also hold that, considering all
of the evidence, including evidence on which appellant relies to contradict the jury’s
verdict, a reasonable fact finder could have formed a conviction that appellant
endangered Z.M. Thus, we hold that the evidence is factually sufficient.
          Accordingly, we overrule appellant’s first issue presented for review.
D.      Best Interest of Z.M.
          In determining whether termination is in the child’s best interest, we may
consider several factors, including, but not limited to, (1) the child’s desires, (2) the
current and future physical and emotional needs of the child, (3) the current and
future physical danger to the child, (4) the parental abilities of the person seeking
custody, (5) whether programs are available to assist the person seeking custody in
promoting the best interests of the child, (6) plans for the child by the person seeking
custody, (7) the stability of the home, (8) acts or omissions of the parent that may
indicate that the parent-child relationship is not proper, and (9) any excuse for acts
or omissions of the parent. See In re L.M., 104 S.W.3d at 647; see also Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). The burden is on TDPRS to rebut the
presumption that the best interest of the child is served by keeping custody in the
natural parents. In re K.C.M., 4 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.]
1999, pet. denied). The Holley factors are not exhaustive, nor must all of the factors
be proved as a condition precedent to parental termination. See In re C.H., 89 S.W.3d
at 27. The absence of evidence about some of these considerations would not
preclude a factfinder from reasonably forming a strong conviction or belief that
termination is in the child’s best interest, particularly if the evidence were undisputed
that the parental relationship endangered the safety of the child. Id. 
          1.       Child’s DesiresThe record fails to reflect the desires of Z.M. because Z.M. is an infant.
          2.       Child’s Current and Future Physical and Emotional Needs
          Appellant contends that the record shows that she had sufficient financial
resources to meet the needs of Z.M. However, appellant failed to provide evidence
that she was able to support herself financially. Appellant testified that she was
unable to work during her pregnancy with Z.M., but that her mother paid her rent
during this time. Appellant testified that she supported herself at the time of trial and
had done so for the past three months by cleaning apartments on a part-time basis. 
Appellant also testified that she had secured an additional job as a cafeteria worker. 
However, appellant failed to provide proof that she was employed cleaning
apartments. Appellant did provide a paycheck stub from her employment at the
cafeteria. Appellant testified that if the children returned to her home, she would
support them with earnings from her current job and with the help of her family. 3.Current and Future Physical Danger to Child
            Appellant contends that she did not engage in conduct that endangered Z.M. 
However, appellant admitted that she was a narcotics addict and that she had
continued to use narcotics, most recently in November 2003, just months prior to the
termination hearing in the trial court. Appellant also admitted that one of her
children, M.D.V., was born with marijuana in her system and that she used
prescription drugs recreationally during her pregnancy. Appellant admitted that, prior
to having her children taken into protective custody, there was a period in which she
smoked marijuana on a daily basis after the children were put to sleep. Appellant
testified that she quit using narcotics after M.D.V. was born. However, while
attempts were being made to place M.D.V. back into appellant’s care, and while Z.M.
was approximately four to five months old, appellant relapsed and used narcotics in
November 2003. Nonetheless, appellant testified that she did not believe that her use
of narcotics endangered the children’s emotional and physical well-being. Evidence
of pre-natal and post-natal drug abuse by a parent may be a ground for termination. 
In the Interest of R.D., 955 S.W2d 364, 368 (Tex. App.—San Antonio 1997, pet.
denied).
            Appellant also contends that she provided a safe environment for her children
and that she had a safety plan in place with friends. However, the record reflects that
appellant endangered her children physically on several occasions. Coleman received
appellant’s case in August 2003 and worked with appellant to bring three of her
children back into the home and to keep Z.M. in the home with appellant. Coleman
worked to identify appellant’s needs, to teach appellant parenting skills and child
safety, ro teach appellant anger management techniques, and to reunify the family.Coleman testified that appellant failed to participate actively in the services that
she offered to ensure the children’s safety by demonstrating a hostile attitude and by
missing scheduled appointments. Coleman also stated that appellant endangered the
safety of her children. For instance, Coleman observed that appellant’s two-year-old,
M.D.V., was prone to open doors and to leave the apartment. At one point, M.R.M.
escaped from the home and was picked up and taken to a mall security center by
passers-by. Knowing this, Coleman instructed appellant regarding child safety,
including teaching appellant how to childproof the home’s doors so that the children
could not leave the home or enter dangerous areas. However, the record shows that
appellant failed to heed Coleman’s recommendations because, at a later time,
Coleman observed M.D.V. open the apartment door and walk outside after appellant
had left the children alone while retrieving a cup from her car. 
During another visit, Coleman observed appellant’s children unattended in the
bathroom. On this occasion, Coleman observed appellant in the dining room talking
on the phone, while M.D.V. was left alone in the bathtub filled with water and Z.M.
was placed next to the tub in his infant seat. Coleman attempted to educate appellant
about the dangers that her conduct posed for her children, but appellant became angry
and defensive. 
Coleman also testified that, when she came to appellant’s apartment on several
occasions, she observed different men inside appellant’s home. Coleman testified
that, on one occasion, one of the men acted in a threatening manner toward her and
asked whether she was scared of him. Finally, Coleman testified that, during several
scheduled visits, appellant appeared to be high on drugs.           4.       Parental Abilities
          As discussed previously, the record reflects that appellant’s parental abilities
are questionable. Appellant persisted in engaging in conduct dangerous to her
children, including leaving the children unsupervised and failing to childproof the
home.
 
          5.       Programs Available to Assist Person Seeking Custody
          Appellant actually completed parenting classes and counseling, but thereafter
continued to use marijuana and prescription drugs for recreational purposes and failed
to cooperate with her case worker to protect the children by, for example, child-proofing her residence.
          6.       Plans for Child by Person Seeking Custody
          The only plan that appellant had was to try to support and to take care of Z.M.,
both by her own efforts and with help from her family.
          7.       Stability of Home
          Although appellant maintained a residence for over a year at the same place,
she found it necessary to rely on family to help pay the rent.
          8 & 9.          Parent’s Acts or Omissions, and Excuses Therefor, that May
Indicate Improper Parent-Child Relationship
 
          The evidence relevant to these factors is discussed above, in our analysis of the
endangerment issue.
          10.     Summary
          Viewing the evidence in the light most favorable to the verdict, we hold that
the trial court could have formed a firm belief or conviction that termination of
appellant’s parental rights was in the best interest of Z.M., particularly because the
uncontroverted evidence shows that appellant endangered the physical and emotional
well-being of Z.M. by engaging in a course of conduct involving the use of narcotics
and the failure to supervise him adequately. See Robinson v. TDPRS, 89 S.W.3d 679,
688 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding pattern and practice of
drug abuse, despite attending programs, to be sufficient evidence to support best-interest finding). We hold that the evidence was legally sufficient and, despite
appellant’s having presented some evidence of completion of parenting classes and
some evidence of establishing an employment history and stable home environment,
factually sufficient to uphold the jury’s finding that termination of appellant’s
parental rights was in the best interest of Z.M.
          We overrule appellant’s second issue presented for review.
Conclusion
          We affirm the termination order of the trial court.
 
 
 
Tim Taft
Justice
 
Panel consists of Justices Taft, Jennings, and Bland.
 
Justice Jennings, dissenting.