135 S.W.3d 687 (2003)
In the Interest of A.I.G. and
J.A.M., children.
No. 04-02-00849-CV.
Court of Appeals of Texas, San Antonio.
March 31, 2003.
*689 Grace G. Kunde, Knobles & Klingemann, Inc., Seguin, for appellant.
Lana S. Shadwick, Houston, William Old, Austin, for appellee.
Elizabeth C. Jandt, Jandt & Jandt, Seguin, for ad litem.
Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice.

OPINION
Opinion by: CATHERINE STONE, Justice.
This is an accelerated appeal from an order terminating Appellant Michelle Garza's parental rights to her two children, A.I.G. and J.A.M. The Texas Department of Protective and Regulatory Services ("TDPRS") sued to involuntarily terminate the parental rights of Garza and George Martinez, J.A.M.'s father. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
According to Garza and Martinez, who were present the afternoon J.A.M. was rushed to the hospital, when Martinez returned home from work, he and Garza immediately started to argue. They argued for about thirty minutes before Garza left for work. J.A.M. was fussy, but Martinez prepared a bottle after Garza left. Martinez claimed that when J.A.M.'s crying grew louder, he placed her in the baby bouncer. He said he shook the bouncer hard, she continued crying, and he went to the kitchen to get her bottle. He claims *690 that when he returned from the kitchen, J.A.M. was seizing. As he picked her up, she had a bowel movement and stopped breathing. Martinez ran outside to call Garza, who was walking to work. Garza returned to the apartment, and the couple performed CPR on J.A.M. An ambulance responded to their call and transported J.A.M. to the hospital.
CT scans revealed that J.A.M. had multiple hemorrhages in her brain and eyes and had suffered a stroke. The effects of this abuse are catastrophic. J.A.M. now has cerebral palsy. Her bones will continue to grow, but her muscles will not due to lack of use. Her muscles will tighten to the point where they can actually pull the bones out of their sockets. She will never be able to walk, talk, see clearly, pottytrain, or understand her surroundings. She will be in constant pain and suffer seizures for the rest of her unnaturally shortened life.[1]
TDPRS alleged that J.A.M. suffered abuse at the hands of both of her parents and presented evidence that J.A.M. suffered from Shaken Baby Syndrome. After a bench trial, the trial court found clear and convincing evidence that Garza and Martinez engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. The court also found clear and convincing evidence that termination of Garza and Martinez's parent-child relationship was in the best interests of both A.I.G. and J.A.M. The court therefore granted TDPRS' request to terminate the parental rights of Garza and Martinez. The trial court also terminated the parental rights of Isaac Antunez, A.I.G.'s father, based on his executed waiver of interest. Garza alone appeals the termination order.

SUFFICIENCY CHALLENGES TO ENDANGERMENT FINDINGS
In proceedings to terminate the parent-child relationship under section 161.001 of the Texas Family Code, the State must establish one or more acts or omissions enumerated under subsection (1), and must additionally prove that termination of the parent-child relationship is in the best interest of the child. See TEX. FAM.CODE ANN. § 161.001 (Vernon 2002). Because termination of parental rights is such a drastic remedy involving fundamental constitutional rights, both the grounds for involuntary termination and the best interest of the child must be proved by clear and convincing evidence. See In the Interest of C.H., 89 S.W.3d 17, 25 (Tex. 2002). Clear and convincing evidence is defined as the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. See id.
Garza claims error on three grounds. First, she contends that TDPRS presented legally and factually insufficient evidence to support a finding by clear and convincing evidence that she endangered the well-being of her children or knowingly placed them with persons who endangered their well-being. In cases such as the instant case where no findings of fact are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. In the Interest of W.E.R., 669 S.W.2d 716, 717 (Tex.1984).
"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *691 In the Interest of J.F.C., 96 S.W.3d 256, 266 (Tex.2002). When reviewing for legal sufficiency, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. Id. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." Id.
In a factual sufficiency review, we determine whether the factfinder could reasonably form a firm belief or conviction based on the evidence about the truth of the State's allegations. Id. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
As evidence that Garza endangered the children, TDPRS presented the testimony of Maureen Watson, a detective with the Seguin police department, who testified that Garza admitted to shaking J.A.M. Garza's sworn statement that she shook J.A.M. "about five times" was admitted at trial. Although Garza testified that she felt coerced into making the statement and denied ever shaking J.A.M., Garza's mother, Aida Trevino, testified that she had seen Garza shake A.I.G. Trevino also testified that she witnessed both Garza and Martinez being "rough" with the children. TDPRS also introduced evidence that Garza suffered from depression, received prescription medicine to treat her depression, and had better anger management skills when she took that medicine. However, Garza testified that she stopped taking the medicine after only a few months, and that her temper became worse at that time.
As evidence that Garza knowingly placed the children with persons whose conduct endangered them, TDPRS presented the testimony of Jared Speights, an investigative caseworker with Child Protective Services. Speights testified that Garza knew Martinez was rough with the children before the day J.A.M. was taken to the hospital. Speights also testified that Garza knew Martinez was bipolar and had stopped taking the medicine prescribed for his mental illness. TDPRS also introduced a second sworn statement made by Garza, stating that she did not trust Martinez with the children because he was short-tempered and impatient. Additionally, Garza herself testified that Martinez was rough with A.I.G. and would scream at her without reason. Garza also testified that although she and Martinez would push, hit, slap, and scream at each other, and even though she knew Martinez was suicidal, she left the children with Martinez. While on the stand, Garza stated that she accepted responsibility for leaving J.A.M. with Martinez, a man she knew to be violent and aggressive.
Martinez's sworn admission that he shook J.A.M. was introduced at trial. J.A.M.'s pediatric neurosurgeon testified that injuries were inflicted on J.A.M. over the course of at least two weeks. TDPRS argued that if Garza herself did not inflict the injuries on J.A.M., Garza should have been able to recognize the signs that her daughter was being abused. This argument is supported by the testimony of J.A.M.'s neurosurgeon that a baby who was shaken like this would likely be listless, pale, lethargic, and would vomit more than normal. Garza testified that she noticed that J.A.M. was limp, pale, and unable to keep her food down in the week before she was taken to the hospital.
*692 Garza contends that legally and factually insufficient evidence was presented to find that the children were continuously endangered prior to removal, or that the children would be endangered if they were returned to her. Garza also argues that there is no evidence or insufficient evidence to establish that her conduct physically or emotionally harmed the children or that she knowingly placed them in a dangerous environment on the day J.A.M. was rushed to the hospital. She argues that because she attended counseling and parenting classes which included discussions on anger management, and because her last counselor testified that she was making positive progress, the court had legally and factually insufficient evidence to find by clear and convincing evidence that she endangered her children or knowingly placed them with persons who endangered them.
A child is endangered when they are jeopardized or exposed to loss or injury. See Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987). Endangerment can be proven through actions and omissions. See In the Interest of D.T., 34 S.W.3d 625, 634 (Tex.App.-Fort Worth 2000, pet. denied). Domestic violence and a propensity for violence may be considered as evidence of endangerment. See In the Interest of B.J.B., 546 S.W.2d 674, 677 (Tex.App.-Texarkana 1977, writ ref'd n.r.e.). Additionally, a parent's mental state may be considered in this analysis if that mental state allows the parent to engage in conduct which endangers the physical or emotional well-being of the child. In the Interest of C.D., 664 S.W.2d 851, 853 (Tex.App.-Fort Worth 1984, no writ). The record supports a finding that both Garza and Martinez shook J.A.M. The record also indicates that both Garza and Martinez suffered from diagnosed but untreated mental diseases and that they were prone to physical outbursts when placed under stress or angered. After considering the entire record and arguments of the parties, we hold that there is legally and factually sufficient evidence to support a finding by clear and convincing evidence that Garza engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered the physical or emotional well-being of A.I.G. and J.A.M. Garza's first issue is overruled.

SUFFICIENCY CHALLENGES TO BEST INTEREST FINDINGS
In her second issue, Garza claims that TDPRS failed to overcome the presumption that allowing the natural parent to retain custody is in the children's best interests. Although a strong presumption exists that a child's best interest is served by keeping them with their natural parents, that presumption disappears when confronted with evidence to the contrary. See In the Interest of H.C., 942 S.W.2d 661, 667 (Tex.App.-San Antonio 1997, no writ). In determining a child's best interest, courts have considered a number of factors, including: 1) the desires of the child; 2) the emotional and physical needs of the child now and in the future; 3) the emotional and physical danger to the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist these individuals to promote the best interest of the child; 6) the plans for the child by these individuals or by the agency seeking custody; 7) the stability of the home or proposed placement; 8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). We need not decide each of these factors against a parent to find that termination is in the child's best *693 interest. See Phillips v. Tex. Dep't of Protective & Regulatory Servs., 25 S.W.3d 348, 355 (Tex.App.-Austin 2000, no pet.).
In deciding A.I.G. and J.A.M.'s best interests, the trial court could have considered the following: (1) the present and future emotional and physical needs of the children; (2) the present and future physical and emotional danger to the children; (3) Garza's parental inabilities; (4) Garza's unwillingness to accept and complete counseling services; (5) Garza's unwillingness and inability to effect positive changes within a reasonable time; and (6) stability of the proposed home for A.I.G. and J.A.M. Evidence supporting termination of Garza's parental rights on grounds of endangerment is also probative of the best interests of the children. See C.H., 89 S.W.3d at 28.
Through each of its witnesses, TDPRS presented evidence that Garza has been unable to meet the physical and emotional needs of her children. Garza's mother testified that both children have lived with her for the vast majority of their young lives because Garza has been unable or unwilling to assume responsibility for them. She testified that Garza was unaware of the needs of the children, and would seldom change A.I.G.'s diaper, even as a toddler. She testified that Garza complained about having to take care of the children and that after a particularly stressful day, Garza threatened to kill Martinez and J.A.M.
Alyssa Halbert, a caseworker for Child Protective Services, testified that Garza failed to complete the anger management classes required by her family service plan, and that Garza's participation in therapy had been sporadic. Halbert testified that Garza could not provide a stable home, and that inability would adversely affect the children. Halbert also expressed concern for the safety of the children due to Garza's inability to control her impulses and cope with anger. Christina Marbach, a licensed professional counselor who met with Garza, also testified that Garza's attendance at counseling sessions ordered by Child Protective Services was sporadic, her absences were unexplained, and her progress was hindered by inconsistent attendance. Marbach testified that although Garza was becoming more insightful in recognizing her depressive symptoms and the triggers for her anger, Garza refused to see the psychiatrist Marbach recommended to prescribe medicine to treat Garza's depression.
The counselors Garza has seen testified that she is not ready to take on the role of a full-time parent to her children. Parenting J.A.M. will present particular challenges because she will never learn to potty-train or ask for food or water. She will require 24 hour-a-day care for the remainder of her life. Trevino has been caring for both children full-time since the State intervened on their behalf. Both Halbert and Trevino testified that Trevino provided and would continue to provide a stable home for A.I.G. and J.A.M. The numerous incidents of neglect and dangerous conditions evinced in the record sufficiently establish a pattern of obvious harm to the children's emotional and physical well-being. Therefore, after reviewing the factors applicable to this case and considering the entire record and arguments of the parties on appeal, we hold that TDPRS and the attorney and guardian ad litem presented legally and factually sufficient evidence to support a finding by clear and convincing evidence that termination of Garza's parental rights is in the best interests of A.I.G. and J.A.M. Garza's second issue is overruled.

GARZA'S REQUEST FOR ABATEMENT
Finally, Garza argues the appeal should be abated because the trial court's order did not contain specific positive findings. The order stated that the *694 trial court found clear and convincing evidence that Garza "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children." (emphasis added). She claims the court's failure to identify the conduct upon which it relied in terminating her parental rights prevents her from knowing the exact grounds on which the trial court based its order, and thereby prevents her from controverting its findings. TDPRS responds, and the attorney and guardian ad litem agrees, that abatement to the trial court requiring it to recite factual findings would be improper.
We agree with TDPRS and the attorney and guardian ad litem that the appeal should not be abated. The Texas Rules of Civil Procedure provide that findings of fact are to be separately filed and not recited in a judgment. See TEX.R. CIV. P. 299a. It would have been improper for the trial court to describe the facts supporting its judgment in the body of the judgment itself. See R.S. v. B.J.J., 883 S.W.2d 711, 715-16 (Tex.App.-Dallas 1994, no writ). Furthermore, the trial court's judgment tracked the language of the Family Code provision dealing with endangerment of a child's well-being. See TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon 2002). After entering the endangerment finding based on clear and convincing evidence, the trial court entered a finding based on clear and convincing evidence that termination of Garza's parental relationship was in the best interests of A.I.G. and J.A.M. This is all the Family Code requires the State to prove, and all the trial court is required to find. Therefore, Garza's argument that this court should abate the appeal and order the trial court to make factual findings is without merit. Cf. Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.1990) (recognizing in analogous jury trial that jury properly answered the broad-form question of whether the parent-child relationship should be terminated and specific grounds on which jury relied in answering the termination questions were insignificant).
With the understanding that the trial court would have erred had it made factual findings in its judgment, we turn to Garza's failure to file a notice of past due findings of fact and conclusions of law. See TEX.R. CIV. P. 297. When the trial court failed to respond to Garza's timely request for findings of fact and conclusions of law, Garza did not file a notice of past due findings of fact and conclusions of law. No findings of fact or conclusions of law were ever filed. If a party does not file a notice of past due findings of fact and conclusions of law when required, it is as if no initial request was made and the complaint about the trial court's failure to file findings and conclusions is waived. See Am. Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P., 74 S.W.3d 527, 530 (Tex.App.-Dallas 2002, pet. denied). Therefore, Garza's complaint that the trial court should have made positive findings has been waived. Garza's final issue is overruled. The judgment of the trial court is affirmed.
NOTES
[1] Martinez was convicted of causing J.A.M.'s injuries. However, the record also shows that Martinez and Garza each made statements accusing the other of shaking J.A.M., and that both Garza and Martinez admitted to shaking J.A.M. themselves.