COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-304-CV

MICHAEL J. HENDRICKS APPELLANT

 V.

GAYNELL HENDRICKS APPELLEE

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------ 

Appellant Michael J. Hendricks appeals the trial court’s final decree of divorce.  In two points, Michael contends that the trial court abused its discretion by granting an inequitable division of the community property and erred by refusing to file requested findings of fact and conclusions of law.  We will affirm.

I.  Factual and Procedural Background

Michael married Appellee Gaynell Hendricks in 1998 and filed a petition for divorce in 2003.  Michael and Gaynell owned and lived in a Flower Mound, Texas home (the “Flower Mound home”), but Michael was primarily responsible for paying the mortgages, and Gaynell was primarily responsible for paying bills associated with the home.  Michael and Gaynell also owned a duplex in Pennsylvania (the “Pennsylvania duplex”) that they rented out, but Michael was responsible for paying its mortgage. 

Prior to and throughout the marriage, Michael—who attained an MBA degree—worked as a traveling computer consultant on a contract-by-contract basis making approximately $11,000 to $12,000 gross income per month.
(footnote: 2)  But Michael’s employment was tenuous, causing him to endure periods of unemployment spanning up to six months out of the year.
(footnote: 3)  Prior to and throughout the marriage, Gaynell—who attained a high school diploma—worked as a flight attendant for American Airlines making somewhere between $22,000 and $30,000 per year.  But like Michael, she was also unable to work for substantial periods of time because of back injuries and medical treatment for anemia and fibrous tumors.  When Michael filed for divorce, Gaynell was on unpaid leave from her flight attendant job due to her back injuries.  A few months prior to Michael filing for divorce, however, Gaynell had started her own promotions company—A-1 Promotions Plus—in which she sold hats, shirts, sweatshirts, and seat mats to and for various Flower Mound High School groups, but had failed to turn a profit in this venture at the time of divorce.  

Citing insupportability, Michael filed for divorce in May 2003.  The trial court held a temporary hearing and thereafter ordered that Michael pay $1,000 per month in temporary spousal maintenance.  The court subsequently held two final hearings and ultimately entered its final decree of divorce on grounds of insupportability.  

In the final decree, the trial court awarded Michael 25% of the proceeds from the sale of the Flower Mound home, ownership and possession of the Pennsylvania duplex, two bank accounts in his name, a CNG pension account,  a Merrill Lynch IRA and SEP, an Acura, his business, a Nissan vehicle, his wedding ring, and the contents of a storage unit.  The decree also awarded Michael the following debts: 100% of the balance due on promissory notes for the Flower Mound home, 100% of the balance due on the promissory note for the Pennsylvania duplex, 100% of the balance due on the promissory note for the Acura awarded to him, 100% of the balance due on the promissory note for the Nissan vehicle awarded to him, 100% of the balance due on credit cards in Michael’s name (approximately $3,100), an outstanding phone bill, approximately $2,100 in unpaid utilities on the Flower Mound home, $8,500 in spousal support arrearage, and $7,400 in past due medical plan benefits.

The divorce decree awarded Gaynell 75% of the proceeds from the sale of the Flower Mound home, an itemized list of furniture, goods, fixtures, and equipment in that home, a checking account in her name, her American Airlines pension plan, a Ford Expedition, her business, two dogs, $2,000 from Michael for medical expenses, and $5,000 from Michael for attorney’s fees.  The divorce decree also awarded Gaynell the following debts: 100% of the balance due on the promissory note for the Ford Expedition awarded to her and 100% of the balance due on certain credit cards (approximately $21,222.11). 

Michael filed a request for findings of facts and conclusions of law, but the trial court failed to enter any within the twenty-day deadline. 
See 
Tex. R. Civ. P.
 297.  Michael then filed a notice of past due findings of fact and conclusions of law, but the trial court again failed to enter the requested findings and conclusions.
  
Michael then timely filed his notice of appeal, and this appeal ensued.
(footnote: 4) 

II.  Just and Right Division

In his first point, Michael contends that the trial court erred by ordering an inequitable division of community property without proper evidence.  Gaynell, however, asserts that the trial court’s division of the marital estate was equitable, just, and supported by evidence in the record.  

We review the trial court’s division of the marital estate under an abuse of discretion standard.  
Vardilos v. Vardilos
, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.).  Absent an abuse of discretion, the trial court’s division of the marital estate will not be disturbed on appeal.  
See Ohendalski v. Ohendalski
, 203 S.W.3d 910, 914 (Tex. App.—Beaumont 2006, no pet.). 

Section 7.001 of the family code states that a trial court shall order a division of the marital estate that it deems just and right.  
Tex. Fam. Code Ann.
 § 7.001 (Vernon 2006).  A trial court’s division of the marital estate need not be equal.  
Twyman v. Twyman
, 855 S.W.2d 619, 625 (Tex. 1993).  But a disproportionate division must have a reasonable basis.  
Smith v. Smith
, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).  If there is some evidence of a substantive and probative character to support the decision, the trial court does not abuse its discretion by ordering an unequal division of the marital estate.  
See Ohendalski
, 203 S.W.3d at 914; 
Moroch v. Collins
, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); 
In re Marriage of Jeffries
, 144 S.W.3d 636, 640 (Tex. App.—Texarkana 2004, no pet.).

A. Evidence Supporting the Trial Court’s Division

Michael principally argues that awarding Gaynell 75% of the proceeds from the sale of the Flower Mound home and “all the additional property awarded to her,” while simultaneously awarding him 100% of the balance on the mortgages on the Flower Mound home and “nothing  of equal value” to that awarded Gaynell in return, was an abuse of discretion.  Gaynell contends that there was ample evidence in the record to support the trial court’s division.  The record supports Gaynell’s position.

The record reveals evidence demonstrating a disparity between the education levels of Michael, who obtained an MBA, and Gaynell, who obtained a high school diploma, a disparity between their past earnings, and a disparity between their future earning potential due to Gaynell’s back injuries.  The record demonstrates that the trial court heard testimony that those back injuries may have been agitated by an alleged assault
(footnote: 5) that Michael committed against Gaynell prior to filing for divorce.
(footnote: 6)  The record also reveals that Michael had been delinquent on court-ordered temporary support payments on at least ten occasions, had engaged in extramarital affairs prior to filing for divorce, had paid for trips with other women during the marriage, and, prior to the alleged assault that the trial court heard about and the Virginia court found Michael not guilty of, had punched Gaynell in the face and had thrown her into a fireplace.   Although Michael argues that he was awarded nothing of equal value to that awarded to Gaynell, the trial court was not required to make an equal division of the marital estate.  
See Twyman
, 855 S.W.2d at 625.  Notwithstanding the absence of such a requirement, the trial court awarded Michael the Pennsylvania duplex, which he could either occupy himself or continue renting out to offset the mortgage payments owed thereon, and left Gaynell without a home.  The trial court also awarded Michael two vehicles, one of which was leased in his company’s name and the other which was free and clear of any debt, and essentially left Gaynell without a car by awarding her the Ford Expedition, which Gaynell testified would have to be returned to her mother in Pennsylvania because of her inability to make the payments on it.  While the trial court awarded Michael 100% of the promissory notes on both the Flower Mound home and the Pennsylvania duplex, Michael and Gaynell both testified that Michael always paid those notes with his own earnings during the marriage.  And the trial court awarded a greater amount of credit card debt to Gaynell by awarding her approximately $21,000 in credit card debt, including debts owed on credit cards solely in Michael’s name, and only awarding approximately $3,000 in credit card debt to Michael.  

After reviewing the record, we hold that there was some evidence of a substantive and probative character to support the decision to award Gaynell a disproportionate amount of the marital estate.  
See Vardilos
, 219 S.W.3d at 921
; 
Moroch
, 174 S.W.3d at 857. Accordingly, we hold that the trial court did not abuse its discretion in dividing the marital estate.

B. Missing Reporter’s Record

Also in his first point, Michael contends that he was prejudiced by the lack of a proper record “due to the disappearance of a Court reporter.”  
See 
Tex. R. App. P.
 34.6(f).  Gaynell argues that by failing to show that any omitted portion of the record was “necessary to the appeal’s resolution,” Michael has failed to demonstrate that he is entitled to a new trial. 

Rule 34.6(f) of the Texas Rules of Appellate Procedure states that an appellant is entitled to a new trial if (1) he timely requested the reporter’s record, (2) a significant exhibit or portion of the reporter’s notes and records has been lost, destroyed, or is inaudible, (3) that exhibit or portion is necessary to the appeal’s resolution, and (4) that exhibit or portion cannot be replaced by agreement of the parties or a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.  
Id
.
  In accordance with this rule, the appellant bears the burden of proving that (1) a significant portion of the record was lost or destroyed, (2) through no fault of his own, (3) that the missing portion is necessary for his appeal, and (4) the parties cannot agree on the record.  
See Routier v. State
, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 1040 (2004); 
Dunn v. Bank-Tec S.
, 134 S.W.3d 315, 329 (Tex. App.—Amarillo 2003, no pet.).  An appellant fails to satisfy rule 34.6(f) when he fails to show that the missing portion of the record is necessary to his appeal.  
Routier
, 112 S.W.3d 
at 571-72.

Michael asserts only that he is “prejudiced by the lack of a proper record due to the disappearance of a Court reporter.”  He makes no further argument specifying what portion of the record is missing or why that portion of the record is necessary to his appeal. 
 
Accordingly, we hold that Michael failed to satisfy rule 34.6(f) and is therefore not entitled to a new trial.  
See id. 
(holding that appellant was not entitled to new trial where she failed to demonstrate that missing portion of record was necessary to resolution of appeal); 
Young v. Neatherlin
, 102 S.W.3d 415, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same).

We overrule Michael’s first point.

III.  Findings of Fact and Conclusions of Law Argument Waived

In his second point, Michael argues that the trial court erred by refusing to make findings of fact and conclusions of law despite his requests for them.  Gaynell argues that the trial court’s failure to make findings and conclusions was not harmful because there is ample evidence in the record to support the trial court’s judgment.  

Civil procedure rule 296 states that a party may request findings of fact and conclusions of law, but that such request must be filed within twenty days after the final judgment is signed.  
Tex. R. Civ. P.
 296.  Rule 297 requires that the trial court file those requested findings and conclusions within twenty days of a timely request.  
See 
Tex. R. Civ. P.
 297.  But when the trial court fails to adhere to that twenty-day deadline, the requesting party “shall, within thirty days after filing the original request,” file a notice of past due findings of fact and conclusions of law.  
Id.
  When a party fails to file a notice of past due findings of fact and conclusions of law within thirty days of filing its initial request, it is as if the party made no initial request, and any complaint about the trial court’s failure to file findings and conclusions is waived.  
See In re A.I.G.
, 135 S.W.3d 687, 694 (Tex. App.—San Antonio 2003, no pet.); 
Am. Realty Trust, Inc. v. JDN Real Estate—McKinney, L.P.
, 74 S.W.3d 527, 530 (Tex. App.—Dallas 2002, pet. denied).  

Here, the trial court signed the final divorce decree on May 12, 2005.  Michael’s request for findings of fact and conclusions of law, filed on May 24, was therefore within the twenty-day deadline for filing such requests.  
See 
Tex. R. Civ. P.
 296.  The trial court had until June 13 to file those findings and conclusions, and Michael had until June 23—thirty days from the time the original request was filed—to file a notice of past due findings of fact and conclusions of law.  
See 
Tex. R. Civ. P.
 297.  Michael filed his notice of past due findings and conclusions on July 7—fourteen days after the deadline for filing such notice.  
See id.
  Because Michael failed to file his notice of past due findings and conclusions by the deadline, it is as if he made no initial request, and his complaint about the trial court’s failure to file findings and conclusions is waived.  
See In re A.I.G.
, 135 S.W.3d at 694; 
Am. Realty Trust, Inc.
, 74 S.W.3d at 530.  We therefore overrule his second point.

IV.  Conclusion

Having overruled Michael’s first and second points, we affirm the trial court’s judgment.

 SUE WALKER

 JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: July 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The record also reflects that Michael may have earned up to $250,000 in some years.  

3:
He was unemployed for approximately four to five months during the year before filing for divorce, for three to four months during the year prior to that, and for approximately six months during the year prior to that. 

4:
We note that although the original notice of appeal was filed in August 2005, a lengthy delay in obtaining the entire reporter’s record prevented Appellant and Appellee from submitting their briefs to this court until February and April 2007.  

5:
Although copies of the Virginia trial court order finding Michael not guilty of these assault charges and the Virginia trial court order expunging the assault charges from Michael’s record are attached to Michael’s reply brief filed with this court, nothing in the clerk’s or reporter’s record indicates that the trial court was made aware of these two documents even though the not guilty verdict was rendered before the trial court entered its final decree.  In fact, the record reflects that both before and after the not guilty verdict, the trial court heard Gaynell’s testimony that her back injuries were made worse by this alleged assault. 

6:
In his reply brief, Michael argues that Gaynell and her counsel committed perjury by utilizing fabricated assault charges.  We note that whether Gaynell or her counsel committed perjury is not an issue before us in our review of whether the trial court abused its discretion in its division of the marital estate, nor is the alleged perjury an issue on which this court can grant relief.