# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00325-CV

**E. F., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 239,429-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant E.F. challenges the trial court's termination of her parental rights to two children. She contends that the jury's finding that termination of her rights is in the children's best interests is not supported by factually sufficient evidence. We will affirm the decree of termination.

This case concerns parental rights to two children—a six-year-old boy and a twenty-one-month-old girl.[1] The boy's father is dead. The girl's father, whose incarceration for statutory sexual assault of a teenage girl was anticipated at the time of trial, does not appeal the termination of his parental rights. The children have lived most of their lives with their maternal grandparents

---

[1] Because the record in this case has been sealed by court order, we will forego an extensive public discussion of the evidence underlying the decisions made by the jury and the trial court at the trial. We have reviewed the record presented and intend to discuss salient portions in a manner that will not reveal the identities of the parties.

who were, at time of trial, both around 70 years old. The children's mother also lived with them for some of that time.

E.F. signed an Affidavit of Relinquishment of Parental Rights by Mother for each child. Those affidavits contained many declarations, including the following:

> I was fully informed of my rights, powers, duties, and privileges as a parent before executing this affidavit.
>
> . . . .
>
> I HEREBY RELINQUISH ALL MY PARENTAL RIGHTS TO THE CHILD.
>
> THIS AFFIDAVIT IS IRREVOCABLE.
>
> I UNDERSTAND THAT THIS MEANS THAT I CANNOT CHANGE MY MIND AND ASK FOR THE RETURN OF MY CHILD.
>
> I execute this affidavit freely and voluntarily because I deem it to be in the best interest of the child to terminate the parent-child relationship between myself and the child.
>
> I agree to the termination of my parental rights, and deem it to be in the best interest of the child, that my parental rights be terminated.
>
> . . . .
>
> I consent to the placement of the child for adoption by the Texas Department of Family and Protective Services to my father [R.F.] or by an agency authorized by the Texas Department of Family and Protective Services to place the child for adoption.

E.F. asserted at the trial court and in her statement of points on appeal that she signed the affidavit under coercion, duress, or overreaching by the Texas Department of Family and Protective Services. She does not cite on appeal, however, any evidence in the record supporting the allegation that her execution of the affidavit of relinquishment was in any way involuntary.

There was evidence at trial that E.F. chose to remain in a relationship with the girl's father even though he hit E.F., had an extensive criminal and drug history, and admitted sexually assaulting a teenage girl. The children's maternal grandfather reported that, on one occasion, E.F. called while drunk and hysterical, demanding that he drive an hour to take the children from her. He reported that, at the scene, he heard E.F. tell the girl's father that if he (the girl's father) did not want to take care of the child, then she also did not want to take care of the child. E.F. was arrested for public intoxication while her child was strapped into a car seat placed on the hood of a car, and the maternal grandfather took the child home with him. E.F. reported that she lost jobs due to her continued involvement with the father of her younger child. She had continued the relationship after stating that she would end it, though there was testimony that she was beginning to see the cost of continuing the relationship. While under the Department's scrutiny in this case, she failed to complete a plan that required therapy and parenting classes, maintain stable housing and employment, or show progress during the case. There was some evidence that she had the capacity to improve her parenting skills and life choices, but repeated evidence that she had not done so.

The children undisputedly are thriving and were described as "bonded" to their maternal grandparents, whom they call "Dad" and "Granny." They call E.F. "Mom." The children's grandfather is a military veteran and there was evidence that the children will, if adopted by him, have access to insurance and educational funding benefits that they would not have if they were simply his wards.

E.F. contended at trial that she did not seek to disrupt the children's living arrangement. She sought to have her parents continue to be the children's primary caregivers while

3

she was allowed limited visitation until she proved capable of handling more.  Indeed, her parents intended to continue to allow her to visit the children if her parental rights were terminated, even seeking and obtaining modification of the original protective order that had banned contact.

The jury unanimously voted to terminate appellant's parent-child relationship with the two children.  To make that finding based on the charge presented, the jury necessarily found by clear and convincing evidence (1) that, after this suit was filed, appellant executed an unrevoked or irrevocable affidavit of relinquishment of parental rights, and (2) that termination of the parent-child relationship with appellant would be in the children's best interests.  *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2011); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).  In her blended motion for new trial and statement of points on appeal, E.F. challenged the legal and factual sufficiency of the evidence to support those findings.

In her appeal on the merits, appellant challenges only the factual sufficiency of the evidence to support the finding that termination of E.F.'s parental rights was in the children's best interests.[2]  Proceedings to terminate parental rights under the Family Code require proof by clear and convincing evidence.  Tex. Fam. Code Ann. § 161.001.  Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  *Id.* § 101.007 (West 2008); *In re J.F.C.*, 96 S.W.3d 256,

---

[2]  In her original brief on appeal, E.F. urged by her sole issue that the trial court erred by finding that this appeal was frivolous.  After the record was filed, E.F. filed a reply brief in which she urged by her sole issue that the best-interest finding was erroneous.

In our order affirming the finding that the appeal was frivolous, we permitted the parties to file further briefing on the merits of the appeal.  None was filed.

4

264 (Tex. 2002). Factors commonly used in making best-interest findings include: (1) the child's desires; (2) the emotional and physical needs of the child now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by those individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.). This is not an exhaustive list, and other appropriate factors may be considered. *Holley*, 544 S.W.2d at 372. No one factor is controlling, and the facts of a case may mean that evidence of one factor is sufficient to support a finding that termination is in the children's best interests. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.). The absence of some factors does not prevent the jury from finding by clear and convincing evidence that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27. The best-interest standard does not permit termination merely because a child might be better off living elsewhere. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The strong presumption that a child's best interest is served by keeping the child with his or her biological parents disappears when confronted with evidence to the contrary. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.).

In reviewing the factual sufficiency of the evidence to support a jury finding, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the

overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Overlaying that standard of review on the clear-and-convincing burden of proof in termination cases, our appellate standard of review for findings in such cases is as follows: "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266. We must give due deference to the fact finder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

E.F. declared in her affidavit of relinquishment that termination of her parental rights was in her children's best interests. She later contended that her affidavit was involuntary, but presented no evidence to that effect. She also chose not to appear at the hearings on termination and on the motion for rehearing, allegedly fearing arrest on outstanding warrants. She had no duty to appear or give testimony—the burden of proof at the termination hearing was on the petitioner Department. *See Williams v. Williams*, 150 S.W.3d 436, 448 (Tex. App.—Austin 2004, pet. denied). A result of her choice, however, is that she did not present evidence to controvert her statements swearing that she believes that termination of her parental rights was in her children's best interests.

The desires of the children in this case must be divined inferentially. When assessing the desires of children too young to testify articulately, courts can consider their bond with their parents and prospective adoptive parents. *See In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.). The young children in this case did not testify. The trial court heard testimony that the children had lived with their maternal grandparents almost all of their lives. The children were

thriving and bonded to the couple they called "Dad" and "Granny." In this context, the fact that E.F. had lived with them for some of their lives with their grandparents and that they called her "Mom" may nevertheless provide some evidence that termination is not warranted. It may provide some support for her request that the grandparents continue as managing conservators and she remain a possessory conservator with limited access. Evidence that the children recognized her as their mother and that she lived with them for some time does not, however, weigh "heavily" against termination as she contends.

Much of the evidence in the case pertains to more than one of the *Holley* factors. Even if the father of her younger child is in prison for an extended period, the overarching and relevant danger to the children is from E.F.'s choices. She engaged in risky behaviors and maintained a relationship with a man whose exploits included abusing her, using illegal drugs, and sexually abusing a child. She nevertheless at one point declared that she would abandon her child to stay with him. While at risk of permanently losing her children, she failed to take steps required to keep them. Although there was testimony that she had the capacity to improve her skills and choices, there is no evidence that the girl's father's incarceration would reorder E.F.'s priorities to the benefit of her children. Instead, there is only the evidence that she consistently chose otherwise even when faced with losing her parental rights. This calls into question her parenting skills, including the ability to meet the children's needs and to protect them from danger now and in the future. *See Holley*, 544 S.W.2d at 372.

By contrast, evidence shows that the children are thriving in E.F.'s parents' care. They have met the children's needs and protected them from danger. Evidence showed their home

7

is stable and that the children can have access to certain potential financial benefits only if adopted by the grandparents, which can happen only if E.F.'s rights are terminated. Evidence of the grandparents' age as well as E.F.'s father's health and temperament raises some concerns.[3] But such evidence is not so pervasive or persuasive as to warrant reversal of the jury's determination.

E.F. contends that the Department failed to show that termination of her parental rights was in her children's best interests in large part because it failed to show that termination would change their circumstances. The children have lived much of their lives with E.F.'s parents. The Department intended to continue that placement by having E.F.'s parents adopt the children. E.F. argues that the court should have rejected termination in favor of the status quo, keeping her parents as the primary caregivers but also retaining the possibility that she could regain greater rights or custody. The fact that her parents had met the children's needs despite the existence of E.F.'s parental rights is not a persuasive argument to preserve her legal status as their mother. Further, although E.F. had lived previously with her parents and children, her father testified that she would not be living with them in the future because of her disruptive behavior.

We conclude that, taken as a whole, the record supports the jury's determination that clear and convincing evidence showed that termination of E.F.'s parental rights served the children's best interests. Coupled with E.F.'s Affidavit of Relinquishment of Parental Rights by Mother for each child, that evidence and finding support the trial court's termination of E.F.'s parental rights.

---

[3] The grandfather smokes and has had a stroke. There was also evidence that he has anger management issues, had cut off access by the children's paternal family, and had used racial slurs regarding the children's paternal family.

8

We affirm the trial court's decree terminating E.F.'s parental rights to both children.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   December 30, 2011