

NUMBER 13-12-00674-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF J.A.C., JR., ET AL.

**On appeal from the County Court at Law
of Aransas County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

This case involves the termination of parental rights. By two issues, appellant S.C. ("Mother")[1] contends that there was legally and factually insufficient evidence to support that termination of her parental rights was in her children's best interests, or to support the termination under sections 161.001(1) (D), (E), (F), (O), and (P) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (F), (O), (P) (West Supp. 2011). We affirm.

---

[1] We use aliases to protect the minors' identities. *See* TEX. R. APP. P. 9.8(b).

## I. BACKGROUND

The Texas Department of Family and Protective Services (the "Department") received a complaint about the medical neglect of a child, J.J., in Aransas County, Texas. When a Department employee arrived at the home to investigate, she was surprised to find Mother living there with her three sons, J.A.C., Jr. ("Child One"), J.A.C. ("Child Two"), and J.A.C. ("Child Three").[2] Mother already had an open Family Based Safety Services ("FBSS") case. According to Stephanie Diaz, an investigation supervisor for the Department, FBSS cases offer voluntary services to families "in which abuse and neglect has either occurred or there is a significant risk of abuse or neglect."

As part of her FBSS case, Mother's mom, "Grandmother," was supposed to supervise and care for Child One, Two, and Three. Mother was not permitted to have unsupervised contact with her children. At this visit, though, the Department learned that this requirement was being violated because Mother was living with Grandmother and the children. Other requirements for Mother's FBSS case included parenting classes, counseling, and outpatient drug treatment. Mother had not begun any of these programs. Given the open FBSS case, the Department initiated an investigation regarding Mother.[3]

The Department investigator described the home in which it found Child One (age 9), Two (age 4), and Three (age 3) as having empty prescription bottles on the floor and "trash everywhere." According to the investigator, several of the adults who lived in the home either actively used drugs or had a significant history of drug abuse.

---

[2] The initial call regarding medical neglect was for J.J., who is not related to Mother or any of her children. J.J. lived at the home with his parents, along with Mother and her family. Neither J.J. nor his parents are parties to this appeal.

[3] The Department opened a separate investigation for J.J.

2

The Department learned that Mother was heavily under the influence of methadone, which she was prescribed to help her recover from a heroin addiction, and slept for most of the day.

The children ran around barefoot and had dirt under their fingernails and on their hands and the bottoms of their feet. They did not appear to have been bathed "in days." When the Department took Child One, Two, and Three to Driscoll Children's Hospital for a physical evaluation, they learned that Child Two's permanent teeth were at risk of rotting because of the condition of his baby teeth. The hospital advised that Child Two's oral health issues needed "to be taken care of immediately," especially because the child reported that his mouth hurt. Also, Child Three was cross-eyed and required medical attention. The hospital found that all three children were "physically neglected." The Department removed Child One, Two, and Three from the home and scheduled an adversary hearing to determine custody two weeks later.

The day after her children were removed, Mother submitted to a drug test. She tested positive for methadone, for which she had a prescription, but also tested positive for cocaine and benzodiazepine. The Department organized visits between Mother and her three sons in the two weeks prior to the adversary hearing. Melissa Diaz, a Department conservatorship worker, testified that Mother "would just sit there" in "a dazed state" during these visits. Diaz observed that Mother sat with "a blank stare" while her children played around her and that "she wouldn't interact" with the children at all. In Diaz's opinion, Mother abused methadone to the point where she did not even understand that the children were being removed from her care.

3

After the adversary hearing, the children were placed in foster care until trial. Pending a final resolution, the Department established a conservatorship case for the family with the end-goal of reunification of the children with their mother. The conservatorship worker assigned to the case was Melissa Hernandez. Hernandez prepared a service plan for Mother which included random drug testing, individual counseling, parenting classes, substance abuse support groups, a drug assessment, and attendance at Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings. Mother was also required to pay $50 in child support total for her sons and to maintain steady employment. Mother only partially complied with the service plan. While she completed some parenting classes, attended some counseling sessions, and visited her children, she remained unemployed, only made one child support payment, and failed to provide a drug assessment or documentation showing attendance at AA or NA meetings.

Most significantly, Mother failed to submit to all of the requested random drug tests required by the service plan. And on some of the occasions when she did submit to the testing, she tested positive for cocaine and benzodiazepine. At trial, the Department admitted drug tests showing that Mother tested positive for cocaine in March 2011, August 2011, March 2012, May 2012, twice in June 2012, and in October 2012. In fact, her most recent hair follicle test showed that she had abused cocaine within the ninety day period before her trial.

The Department also expressed concern about the home where Mother currently lived. As a requirement for reunification, Mother was charged with providing "a safe and protective home environment with working utilities for her children." Two and a half

4

months before trial, Hernandez visited the home where Mother intended for her children to live. Hernandez reported that there was still trash clutter on the floors, including broken glass and empty bottles of medication. The children's room had one twin bed with mold on it, clothing and trash on the floor, and an empty bottle of Jack Daniel's whiskey.

Mother testified. She stated that it was difficult for her to submit to the random drug testing because she lacked reliable transportation. She also denied using cocaine, and did not understand why her tests kept showing positive results. She admitted that sometimes she was drowsy around the children, but she attributed this condition to inappropriately dosed methadone, for which she had a prescription. Mother further denied that her home was not a clean and safe environment for her children, and adamantly denied that the bed she had for her children had mold on it. Mother also stated that she was unable to pay child support because she was assisting her mother with bills.

After considering the evidence, the trial court found that terminating Mother's parental rights was in the children's best interests and that Mother violated sections 161.001(1) (D), (E), (F), (O), and (P) of the Texas Family Code. This appeal ensued.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

Parents' rights to "the companionship, care, custody and management" of their children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see also In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012). Due process requires the application of the clear and convincing evidence standard of proof in parental termination cases. *In re J.F.C.*, 96 S.W.3d 256,

5

263–64 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d at 264; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

> In a legal sufficiency review in this context:

> A court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the reviewing court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 267. The inquiry must be one that asks whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* Therefore, if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

6

A trial court may order termination of parental rights upon finding by clear and convincing evidence that the parent has committed statutory violations enumerated in section 161.001(1)(A) through (T) of the family code, and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), § 161.001(2) (West Supp. 2011). The following non-exhaustive list is considered by courts in analyzing the best interests of a child: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of individuals seeking custody; (5) programs available to assist individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *W. B. v. Tex. Dep't of Protective & Regulatory Servs.*, 82 S.W.3d 739, 742 (Tex. App.— Corpus Christi 2002, no pet.).

## III. ANALYSIS

### A. Best Interests of the Child

In her first issue, Mother argues that the evidence is insufficient to show that terminating her parental rights was in the best interests of Child One, Two, and Three. We review the evidence in light of the *Holley* factors. *See Holley*, 544 S.W.2d at 372.

#### 1. Desires of the Children

Even though none of the children testified at trial, Department employee Hernandez testified that all of the children missed their mother, especially when they

7

were first removed to foster care. Child One repeatedly expressed interest in going home, while Child Two and Child Three wanted to live with their grandmother.

"Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child" to remain in unsafe conditions. *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.). At trial, Department employees testified regarding Mother's ongoing drug use, failure to adhere to the conservatorship plan, lack of employment, and inability to provide a clean and safe home, among other concerns. Department employee Hernandez also expressed apprehension about releasing the children into Grandmother's care because she openly violated the FBSS when she allowed unsupervised visitation with their mother. In light of the foregoing, the children's desire to be with Mother or Grandmother did not appear to be in their best interests.

### 2. Emotional and Physical Needs of the Children
### Emotional and Physical Dangers to the Children

We address these factors together. We note that when the children were removed from the home, the CPS investigator reported that they had not been bathed in days and that they had dirt underneath their fingernails and on their hands and the bottoms of their feet. Driscoll Children's Hospital reported that all of the children were "physically neglected." Child Two had severe and painful dental health issues and Child Three needed treatment for his crossed eyes. The children were living in a trash-filled, dirty home with several adults who were drug addicts. Mother was frequently under the influence of drugs; when she was not asleep, she was still physically and mentally incapable of meeting her children's basic needs. The extensive evidence regarding the

8

children's physical and medical neglect bolsters the trial court's finding that it was in the children's best interests to terminate Mother's rights.

### 3. Parental Abilities of Individuals Seeking Custody[4]

A trial court may consider a parent's history of drug use and irresponsible choices. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Mother's parenting abilities were compromised by her drug addictions. She repeatedly tested positive for cocaine and benzodiazepines, and although she had a prescription for methadone, it rendered her incapable of caring for her children. Child One, Two, and Three were living in a home filled with trash and empty prescription bottles on the floor. They were dirty. Child Two had severe dental problems, and Child Three had a problem with his eyes that needed medical attention. Diaz, a Department conservatorship worker, supervised Mother's visits with her children before the adversary hearing and testified that Mother "would just sit there" in "a dazed state." Diaz observed that Mother "wouldn't interact" with her sons while they were playing. Instead, she just sat with "a blank stare." In Diaz's opinion, Mother abused methadone to the point where she did not even understand that the children were being removed from her care. Mother could not maintain steady employment.

Based on the evidence in the record, Mother's parental abilities to emotionally, physically, or financially provide for her children were limited. This factor strongly supports the trial court's best interest determination.

---

[4] At the hearing, the evidence revealed that the father of Child One, Two, and Three was in Mexico and could not be located. His parental rights were also terminated, but he has not challenged this judgment.

### 4. Programs Available to Assist Individuals

The Department, in both its FBSS and conservatorship cases with Mother, offered her numerous programs to assist her as a parent and develop her caretaking skills. For example, the FBSS plan gave Mother information about parenting classes, individual counseling sessions, and outpatient drug treatment. And as part of the conservatorship plan, Mother had access to individual counseling, parenting classes, substance abuse support groups, and AA or NA meetings. Unfortunately, Mother failed to avail herself of these opportunities, even when the Department clarified that taking these steps would be necessary to be reunited with her children. Mother continued to abuse drugs and did not follow the FBSS or conservatorship plans. As this Court has previously held, "in particular, a parent's drug use and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re C.C.*, No. 13-07-00541-CV, 2009 Tex. App. LEXIS 2239, at *2 (Tex. App.—Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.).

### 5. Plans for the Children

Mother stated that she could provide a good home for her children. However, despite having a year from the time of the removal of her children to the time of the parental-termination trial, mother had failed to maintain steady employment. Mother claimed the locations where she worked only paid her in cash, so she could not verify a continuous job. She had only paid one month of child support, which was set at $50 total for all three children. In addition, according to Hernandez, Mother's proposed home for her children had trash, broken glass, and empty prescription bottles strewn on the floor. The children's room had one twin bed with mold growing on it, clothing and

trash on the floor, and an empty bottle of Jack Daniel's whiskey. The foregoing reasons further support why it was in the children's best interests to terminate Mother's parental rights.

### 6. Stability of the Home or Proposed Placement

As a requirement for reunification, Mother was charged with providing "a safe and protective home environment with working utilities for her children." When Hernandez visited the home Mother had prepared for reunification with her children, he found trash, broken glass, and empty bottles of medication on the floor. The children's room had one twin bed with mold on it, although Mother refuted this during her testimony. Hernandez also reported that clothing, trash, and an empty bottle of Jack Daniel's whiskey were in the children's room. The condition of this home, combined with the fact that mother had not maintained steady employment, support the trial court's finding that termination was in the children's best interest. The proposed placement did not appear to be stable.

### 7. Acts, Omissions, and Excuses of the Parent

During her testimony, Mother attributed her lethargy around her children to inappropriately dosed methadone. However, despite having a year to seek counseling and drug treatment that would enable her to appropriately parent her children, she did not do so. Further, she denied having used cocaine within a month of the trial, despite the fact that hair follicle and urinalysis tests showed otherwise. She failed to maintain a job, and did not pay child support. Mother's actions (or, in this case, inactions) and continuous excuses for her behavior were not in her children's best interests.

11

### 8. Conclusion

Although a strong presumption exists that a child's best interest is served by keeping them with their biological parents, this presumption disappears when confronted with evidence to the contrary. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). In light of the clear and convincing evidence showing that termination of Mother's parental rights was in the best interests of her children, we overrule this issue.

### B.    Section 161.001 of the Texas Family Code

By her second issue, Mother argues there is insufficient evidence to support termination of her parental rights under section 161.001(1)(D), (E), (F), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(1)(D). This section states that a court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in condition or surroundings which endanger the physical or emotional well-being of the child." *Id.*

For all of the reasons outlined in the previous section, we hold that the evidence is sufficient to support the termination of Mother's parental rights under section 161.001(1)(D) of the Texas Family Code. See *In re J.F.C.*, 96 S.W.3d at 266. Because only one statutory predicate ground is necessary to support the termination of parental rights when there is also a finding of best interest, as we previously found, we need not address Mother's additional grounds regarding sections 161.001(1) (E), (F), (O), and (P). *See In re A.V. and J.V.*, 113 S.W.3d 355, 361 (Tex. 2003); TEX. R. APP. P. 47.1.

## IV. Conclusion

Having overruled both of Mother's issues, we affirm the trial court's judgment.

_____
GINA BENAVIDES,
Justice

Delivered and filed the
28th day of March, 2013.