**Affirmed and Memorandum Opinion filed May 17, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00103-CV

## IN THE INTEREST OF M.C.H. AKA B.G.H.

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-01153J**

## M E M O R A N D U M   O P I N I O N

In this appeal from the termination of her parental rights, Kena H. challenges the sufficiency of the evidence to support termination under section 161.001(2) of the Texas Family Code. Specifically, Kena asserts that the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the child's best interest.

### BACKGROUND

At the termination hearing held on January 4, 2012, Kena testified that she has three other children from previous relationships, none of whom resides in Texas. Her two daughters live with their father. Her son lives with her sister because Kena tested positive for cocaine during her pregnancy. None of her family lives in the Houston area.

Kena has had no physical contact with these children, but has spoken on the phone with them. She further stated that she recently has begun providing some financial support for her three older children with the assistance of her boyfriend, Wilbur. Kena admitted that Wilbur has a criminal history, including convictions for robbery and assault, and that he is in recovery from drug abuse.

Kena acknowledged that she has had a drug problem for nine to ten years. She stated that the last time she held a job—working in a fast food restaurant—was eight to nine years ago. She explained that she had supported herself over the last eight to nine years by having "lots of help" and through prostitution. The Texas Department of Family & Protective Services (the "Department") introduced into evidence Kena's multiple convictions for possession of a controlled substance and prostitution.

Kena admitted that she used cocaine during her pregnancy. In February 2011, she gave birth to a cocaine-positive child, M.C.H., who was placed in the temporary custody of the Department on February 14, 2011. Kena testified that the Department provided her with a family service plan. She stated she successfully completed parenting classes, completed a drug and alcohol assessment, and was admitted to a rehabilitation facility for her addiction issues shortly after M.C.H. was born. Kena completed her rehabilitation services, but relapsed in October 2011. She acknowledged that her drug abuse during her pregnancy and her subsequent relapse constituted conduct harmful to her child.

After her relapse, Kena re-entered a rehabilitation center.[1] She testified that the rehabilitation center performs random drug testing and that she has been drug-free since her relapse. She stated that she has been undergoing counseling at the center and expected to complete her on-site treatment shortly. She explained that she planned to move into Star of Hope once she completed her treatment, although she had no confirmation from Star of Hope that it had space available for her. According to Kena, she expected that M.C.H. would be permitted to live with her at the treatment center and

---

[1] Kena initially re-entered the same rehabilitation center as she had been in before, but was expelled from that center for getting into a fight with another patient.

then move with her to Star of Hope. Kena testified that she had been advised that at Star of Hope she would receive job training. In the meantime, until she was able to obtain employment, Kena testified that Star of Hope and Wilbur would provide for her and M.C.H. She stated that she could stay at Star of Hope for up to eighteen months.

Child Advocate Terrence Gee testified that he had visited with M.C.H. in her current placement. He stated that M.C.H. had been placed with foster parents who are meeting all of her physical and emotional needs. According to Gee, M.C.H. appeared happy, adjusted to her foster family, and bonded with her foster parents. He further testified that the foster family would like to adopt M.C.H. Gee explained that Child Advocates first gathered information to determine if it would be in M.C.H.'s best interest to be reunified with Kena. However, by the time of the trial, Child Advocates believed that Kena's parental rights should be terminated because she had not completed all aspects of her parenting plan, including finding a stable home and employment to meet M.C.H.'s needs. Gee testified that Child Advocates was very concerned because of Kena's lengthy history of drug abuse and her relapse during the pendency of the case.

Gee stated that he investigated the availability of Kena's relatives to care for M.C.H. He explained that Kena had no family in the Houston area, but had family in New Jersey. In particular, Gee stated that Kena's uncle and his wife cared for Kena and wanted to help her, but her uncle stated that he could help Kena only in the short term and could not take M.C.H. long term.

M.C.H.'s foster mother testified regarding how M.C.H. was progressing in foster care. She stated that M.C.H. had been in her home for almost eleven months. She explained that, when M.C.H. was first placed in her home, she had some mild withdrawal symptoms from the cocaine in her system, but was "doing great" now. She stated that M.C.H. suffered no delays and had no special needs. Finally, she testified that she and her husband, who have no other children, would like to adopt M.C.H.

The Department's caseworker, Denise Reyes, testified that family reunification was considered at the beginning of this case. She stated that the goal changed when Kena

relapsed and got into a fight with a patient when she returned to rehab. Reyes explained that the Department had identified M.C.H.'s foster parents as potential adoptive parents who could provide M.C.H. with a safe, stable, and loving home. Reyes testified that the Department sought termination of Kena's parental rights because she had not completed the services on the service plan, particularly because she had engaged in criminal activity. Further, Reyes testified that Kena attempted to obtain food stamps under M.C.H.'s name, which was illegal. Kena disputed this testimony, however. Reyes stated that Kena's lack of stable housing or employment meant that she was not prepared to support M.C.H. Reyes also expressed concern about Kena's relationship with Wilbur because of his criminal history, including incarceration for theft, robbery, and possession of a controlled substance. Reyes did not believe Wilbur would be a positive influence on M.C.H.

Rachel Solomon, a program manager at the second rehabilitation facility where Kena was enrolled at the time of trial, testified. Solomon stated that she had known Kena for about three months. She confirmed Kena's testimony that Kena had been sober during her time at the rehabilitation facility. She also testified that the facility would assist Kena in attempting to find transitional living at Star of Hope. She could not guarantee that Star of Hope would have room for Kena but testified that she believed Kena's chances were "pretty good" of getting placed there when she finished treatment. She also testified that it is fairly common for relapses to occur during recovery, but she believed that Kena was a good candidate for recovery based on Kena's progress. She also testified that she believed it would help Kena's recovery if the court did not terminate her parental rights.

Solomon was aware of Kena's lengthy history of drug abuse and criminal convictions. She testified that Kena needed at least another seven or eight months to fully recover. She stated that leaving M.C.H. "in limbo" for this time would be difficult for M.C.H., but disagreed that it would not be in M.C.H.'s best interests to have her life put on hold while Kena attempted to recover from her drug addiction.

At the close of evidence, the trial court terminated Kena's parental rights and named the Department M.C.H.'s permanent managing conservator. It signed the termination order on January 18, 2012. This appeal timely followed.

## ANALYSIS

### A.    Standard of Review

Parental rights can be terminated only upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In conducting a legal-sufficiency review in a parental termination case, a reviewing court looks at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573–74 (Tex. 2005). In reviewing termination findings for factual sufficiency, courts must give due deference to the fact-finder's resolution of factual questions. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The court then determines whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the allegations against the parents. *Id.* at 25.

### B.    Application

Kena H. does not challenge the trial court's finding that she has committed an act prohibited by section 161.001(1). Tex. Fam. Code § 161.001(1). Rather, she only challenges the trial court's finding that termination is in the child's best interest. *Id.* § 161.001(2). Thus we focus our analysis on this issue only.

The determination of a child's best interest does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In reviewing the sufficiency of the evidence to support a best-interest finding, courts may consider (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody in promoting the best interest of the child, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Id.* at 371–72. Although there is a strong presumption that it is in the child's best interest to allow the natural parent to retain custody, when confronted with evidence to the contrary, that presumption disappears. *In re A.I.G.*, 135 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, no pet.). Evidence proving one or more of the statutory grounds for termination may be probative in determining that termination is in the best interest of the child. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). With these considerations in mind, we review the evidence below.

First, we note that M.C.H. is an infant and thus is too young to express her desires. However, Child Advocate Gee testified that M.C.H. appeared to be happy and bonded with her foster family. Kena has not cared for M.C.H. since M.C.H.'s birth; thus, there is no evidence that Kena has developed an emotional bond with M.C.H. As to M.C.H.'s present and future physical and emotional needs, Kena admitted she did not have a stable home or employment and would be relying on the assistance of others to provide for M.C.H. The last time Kena held a job was eight to nine years ago. She has been supporting herself since then by prostitution and assistance from others. Kena admitted that she had lacked regular income and stability for many years. Her plans to stay at Star of Hope were, at most, for a period of eighteen months. Additionally, she had no

6

confirmation from Star of Hope that she would be accepted there. In effect, her "plans" were hopes and desires without any evidence that these hopes and desires would come to fruition. Although we applaud Kena's efforts to turn her life around, a parent without stability, income, or a home is unable to provide for a child's physical and emotional needs. *See In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.) (determining evidence was sufficient to support best-interest finding when mother admitted being unable to care for child and having no stable source of income or permanent home). On the other hand, as discussed above, the foster parents are providing a stable and appropriate home for M.C.H. and are interested in adopting her, providing her the permanence that she needs. Indeed, the need for permanence is paramount in considering a child's present and future needs;[2] Kena's aspirations, while laudable, are no evidence that she is able to provide permanency for M.C.H. now and in the future. We conclude that these factors weigh heavily in support of the trial court's finding that termination is in M.C.H.'s best interests.

As to Kena's parental abilities, she has three children from previous relationships with whom she has admittedly failed to establish a parental relationship. In fact, she admitted that not only had she used cocaine while pregnant with M.C.H., but she had also used cocaine during a previous pregnancy. Kena's history of drug abuse and prostitution has placed the safety and stability of Kena's children at risk. *See D.O.H. v. Tex. Dep't of Family & Protective Servs.*, No. 14-10-00725-CV, 2011 WL 3684568, at *5 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.). We see no evidence that Kena has developed the skills necessary to appropriately parent M.C.H. and promote M.C.H.'s best interests. The lack of evidence of Kena's parental abilities weighs heavily in favor of the trial court's finding that termination of her parental rights is in M.C.H.'s best interests.

---

[2] *In re S.J.*, 14-07-00785-CV, 2009 WL 442485, at *7 (Tex. App.—Houston [14th Dist.] Feb. 24, 2009, no pet.) (mem. op.) (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)).

Kena's relapse during the pendency of this case is also troubling. This relapse occurred after she had been offered therapy, inpatient treatment, and other services under a court-ordered plan for reunification. Although she immediately returned to rehabilitation, she got into a fight with another patient and had to move to a different program. Solomon, one of the directors of the program in which Kena was enrolled, testified that termination of Kena's parental rights would not be good for Kena's recovery, but that is not the issue before the court. Rather, the issue before the court is the best interest of M.C.H.

In sum, we commend Kena's efforts to recover from her lengthy addiction to drugs. She is taking the right steps and has made improvement, and we wish her well in her recovery efforts. However, her history of drug abuse and prostitution, as well as her relapse during the pendency of this suit, coupled with her lack of stable housing, income, and anything beyond aspirations for where she and M.C.H. could reside and what employment she could undertake, support the trial court's finding that termination is in M.C.H.'s best interests. Further, her demonstrated lack of parenting ability with her other three children supports the trial court's finding. M.C.H. is in a stable foster home in which the foster parents want to adopt her. She has bonded with her foster family and appears to be happy and well-supported in that environment. This factor also supports the trial court's best-interest finding. Although termination of Kena's parental rights may not be in Kena's best interests, the trial court had legally and factually sufficient evidence before it to determine that termination of Kena's parental rights was in M.C.H.'s best interests. Accordingly, we overrule Kena's sole issue on appeal.

8

**CONCLUSION**

Having overruled Kena's issue on appeal, we affirm the trial court's order terminating her parental rights.

/s/        Adele Hedges
                Chief Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Boyce.